UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

RAUL SANTANA,

Defendant.

---

12 Cr. 790 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a *pro se* motion from defendant Raul Santana, seeking compassionate release from Federal Correctional Institution ("FCI") Fort Dix, in New Jersey, pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 160 ("Def. Mtn."). For the reasons that follow, the Court denies the motion.

## I. Background

Santana's offense conduct, as admitted in his guilty plea to a robbery conspiracy and cocaine distribution, and as set forth in the presentence report, ("PSR"), is briefly summarized. In 1998, Santana played a central role in a conspiracy to rob Henry Castano, a drug courier for a Mexican cartel. Castano had been expected to deliver $1.3 million in drug proceeds to Juan Rodriguez, a fellow cartel member, which Rodriguez was to pass along to others in the drug-trafficking organization. Rodriguez, however, double-crossed Castano. He contacted Santana, and the two of them organized a crew that included four other individuals to rob Castano of the drug proceeds. PSR ¶ 11. The robbery crew internally agreed that if they were unable to rob Castano before he had provided the drug proceeds to Rodriguez, they would kill Castano to protect Rodriguez from being implicated in the robbery in the eyes of the cartel. *Id.* ¶ 12.

Alas for Castano, by the time the robbery crew reached him, on April 28, 1998, he had already relinquished the $1.3 million in cash to Rodriguez. That day, two members of the robbery crew, carrying out the plan hatched with Santana, impersonated plainclothes police officers with fake police badges, pulled over Castano's vehicle, handcuffed him, covered his face with duct tape, and suffocated him to death in the back seat of a car during a 10–15-minute period, and dumped his body in a cemetery. *Id.* ¶¶ 11–14. Santana served as a lookout. After the murder, the robbery crew met to divide up the proceeds; Santana received approximately $260,000. *Id.* ¶ 15.

Approximately 15 years later, after an investigation identified Castano's killers, Santana, Rodriguez, and a co-conspirator were indicted on charges arising from the murder. *See* Dkts. 1, 5. On October 4, 2013, Santana pled guilty to a two-count superseding information. Dkt. 33. One count, relating to the Santana murder, charged him with participating in the robbery conspiracy, in violation of 18 U.S.C. § 1951. *Id.* Santana acknowledged his culpability for the Castano murder in connection with his plea to that offense. The other count charged Santana with participating in a conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. *Id.* As part of the plea to the first count, and in his sentencing submission, Santana acknowledged his role in Castano's murder. *See, e.g.*, Dkt. 131; *id.*, Ex. A.

On July 26, 2016, after delaying sentencing at the defense's request so as to be held after the sentencing of a codefendant, the Court sentenced Santana to 276 months (that is, 23 years) in prison, followed by five years of supervised release. The prison sentence was five years above the 18-year sentence recommended by the defense. *See* Dkt. 131 at 1. Santana has served approximately half of his sentence and, according to the Government and as confirmed by the

Court, is reported on the Bureau of Prisons's ("BOP") website as scheduled to be released on July 2, 2032. *See* Dkt. 167 ("Gov't Mem.") at 2.

On August 3, 2022, Santana filed a motion for compassionate release. He argues that the COVID-19 pandemic, his age (64[1]), and his medical conditions (hypertension, Type 2 diabetes, hyperlipidemia, and latent tuberculosis), constitute extraordinary and compelling circumstances supporting release. *See* Def. Mtn. at 2, 8–12. He also notes that COVID-related restrictions at FCI Fort Dix have been onerous, including curtailed programming and shortened visitation. *Id.* at 16–17, 23–24. He claims an unblemished disciplinary record—although the Government disputes the point, *see* Gov't Mem. at 4—and urges that he presents a low risk of recidivism, Def. Mtn. at 23–24.

Opposing Santana's application, the Government counters that Santana's medical and other circumstances do not rise to the level of extraordinary and compelling, including because his medical conditions are capable of treatment by the BOP, he has been vaccinated and has received a booster shot, and the presence of underlying medical conditions for a vaccinated prisoner does not qualify for compassionate release under the weight of post-vaccination case law. *See* Gov't Mem. at 3–4. The Government also notes the low incidence of COVID-19 at FCI Fort Dix and case law finding generalized grievances about prison conditions not to warrant compassionate release. *Id.* at 4. In any event, the Government argues that Santana's release or a reduction of his sentence would be inconsistent with the 18 U.S.C. § 3553(a) factors, substantially for the reasons the Court articulated at sentencing in finding a 23-year sentence

---

[1] As of the parties' submissions, Santana was 63 years old. *See, e.g.*, Gov't Mem. at 2. Santana—who was born March 1, 1959—has since turned 64. *See, e.g., id.*, Ex. A.

3

necessary to respect the seriousness of the offense, to deter Santana (and others) from future crimes, and to protect the public. *Id.* at 4–5.[2]

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v.*

---

[2] The Government does not dispute that Santana exhausted his administrative remedies. It notes that, as of his compassionate release motion in this Court, more than 30 days had passed since Santana, within the BOP, applied for a sentence reduction on the basis of his medical conditions. Gov't Mem. at 3 n.3.

4

*Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. It does not apply "to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought by an imprisoned defendant and not the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.     Analysis**

Santana argues that he has demonstrated extraordinary and compelling reasons so as to make him eligible for compassionate release. The Government argues that he has not, and that, even if he had, the § 3553(a) factors do not support release. The Government is correct on both points, and the latter argument is especially and emphatically correct.

5

*First*, the Court does not find extraordinary and compelling circumstances sufficient to justify a reduction of sentence. The heart of Santana's argument is that COVID-19 presents a risk to his health. He notes that he has underlying health conditions, predominantly Type 2 diabetes, hypertension, hyperlipidemia, and latent tuberculosis that, coupled with his age (64), heighten the risks presented by COVID-19. *See* Def. Mtn. at 10–12. Santana's motion, however, was made nearly two-and-a-half years into the pandemic and ignores its present state. In the months immediately after the pandemic struck in March 2020, numerous courts, including this Court, found or assumed extraordinary and compelling circumstances to exist where a defendant's underlying respiratory or other medical conditions exposed them to a heightened risk of death or grave suffering from COVID-19, which was then taking lives on an alarming scale.[3]

Santana's § 3582(c) motion, however, was filed in August 2022, some 29 months after COVID-19 emerged and some 17 months after vaccinations against the disease became widely available. As Santana's Bureau of Prisons medical records reflect, Santana is fully vaccinated and, as of January 2023, has received a booster shot. Gov't Mem., Ex. A. That is game-changing. Santana has not adduced evidence that, with the benefit of such vaccinations (and ensuing booster shots), his underlying and largely latent medical conditions present a sufficiently grave risk from COVID-19 to make his medical circumstances extraordinary and compelling.

---

[3] *See, e.g., United States v. Wilson*, 16 Cr. 317 (PAE), Doc. No. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, 469 F. Supp. 3d 175, 180 (S.D.N.Y. 2020) (same); *United States v. Brown*, 467 F. Supp. 3d 209, 213 (S.D.N.Y. 2020) (same); *United States v. Jasper*, No. 18 Cr. 390-18 (PAE), 2020 WL 1673140, at *2 (S.D.N.Y. Apr. 4, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

*See, e.g.*, *United States v. Gonzalez-Casillas*, No. 07 Cr. 527-1 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022) (denying release request where defendant had not shown himself more vulnerable to COVID-19 than average inmate at his facility and had been vaccinated); *United States v. O'Bryant*, No. 16 Cr. 0317-3 (PAE), 2022 WL 17168192, at *3 (S.D.N.Y. Nov. 22, 2022) (same); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (denying release request where defendant had been vaccinated, making him "no longer at high risk for severe illness caused by COVID-19"). Santana's lengthy (and by now familiar) account of the manner in which the pandemic "rampaged across the globe" to devastating effect, *see, e.g.*, Def. Mtn. at 3–10, is therefore not responsive to current conditions. And his account of court decisions (including by this Court) granting release to inmates during the pandemic's most threatening first year, *see id.* at 10–11, is therefore non-responsive to the present-day reality. Statistics bear that out. As the Government noted, as of its letter, of the 3,779 inmates at FCI Fort Dix, only nine inmates, and no staff members, tested positive, for COVID-19. Santana does not substantiate his generalized claim that the BOP is incapable of addressing the medical needs of inmates at FCI Fort Dix, or of him, specifically.

Finally, Santana laments the unexpectedly rigorous conditions at FCI Fort Dix during the height of the pandemic. That observation is fair. The pandemic occasioned restrictions on visits, movement, and programming through the federal prison system, particularly acutely at municipal jails, but also at long-term facilities. However, generalized statements about prison conditions untethered to compelling specifics of the defendant's particular circumstances do not make the defendant's conditions "extraordinary and compelling." *See, e.g.*, *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release of defendant who has "not demonstrated concretely that the prison conditions he

7

face[s] . . . [are] especially severe, so as to rise to the level of extraordinary and compelling circumstances justifying early release"); *United States v. Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL 807128, at *3 (S.D.N.Y. Mar. 3, 2021) (same); *United States v. Fiseku*, No. 14 Cr. 384-1 (PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (same). Santana has not shown such specifics here.

The Court accordingly does not find extraordinary and compelling circumstances justifying a reduction of sentence.

*Second*, even assuming such circumstances existed, the § 3553(a) factors emphatically would not and could not justify a reduced sentence. At sentencing, the Court expanded at length on why those factors demanded a long sentence like the one imposed. *See generally* Dkt. 136 at 33–45. For no reason other than greed, the Court noted, Santana plotted—and served as lookout during—the gruesome murder of Henry Castano. *Id.* at 34–36. The Court termed Santana's conduct inhumane, "evil," and "awful." *Id.* at 36. Santana also participated in two other robberies and in trafficking cocaine. *Id.* at 36–42. In these circumstances, the Court found, the interests in just punishment, assuring the sentence fit the crime, and promoting respect for the law demanded a lengthy sentence. *Id.* So did the interest in specific deterrence. That factor was heightened in Santana's case by the fact that he had a prior criminal record—notably having been convicted at a jury trial in this District in 1991 of three narcotics-related felonies, for which he was sentenced to 33 months in prison—but that experience had not deterred him from participating in the robbery and narcotics conspiracies and helping organize the savage Castano murder. *Id.* at 43–44. Finally, the public interest in Santana's incapacitation, the Court found, supported a long prison sentence; given Santana's track record of committing violent crimes

undeterred by a prior prosecution, the Court stated, it could not "have great confidence that if you were at liberty any time soon, you would this time obey the law." *Id.* at 44.

The Court's assessment remains persuasive today—and compels the conclusion that Santana's application for compassionate release must be denied as very far from the mark. To release Santana earlier than the sentence imposed would not reflect the gravity of his heinous crimes, mock the gravity of asphyxiating Henry Castano so as to enable Santana and his fellow plotters to escape with vast drug proceeds, and undermine respect for the law. And although Santana is older now than at the time of sentencing, the Court cannot be appreciably more confident that, were he released early, he would durably steer clear of crime.

For these reasons, the Court denies Santana's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: March 24, 2023
      New York, New York